BOARD OF SUPERVISORS OF DE SOTO COUNTY *v.* M. W. JONES ET AL.

[60 South. 655.]

1. ACTION. *Misjoinder. Highways. Contracts. Code* 1906, *sections* 4414, 4441, 4465. *Counties.*

   A count against one of the parties to a lawsuit cannot be joined with the count against that party and other parties not liable under the first count.

2. HIGHWAYS. *Contract. Code* 1906, *sections* 4414, 4441, 4465.

   Under Code 1906, section 4414, giving to the board of supervisors in counties not working roads under the contract system power to have certain kinds of work done by contract upon especially bad places on the public roads, and sections 4441 and 4465, providing that the board may contract for specific work such as cutting down a hill, making a causeway, etc., where the board decides that certain roads cannot be worked under the general contract system, but only under special contract, the courts must assume that there was a public necessity for such action, especially where the property owners permitted, without objection, a special assessment for such work.

3. COUNTIES. *Boards of supervisors. Legislative regulation.*

   It is well settled that the legislature may prescribe the methods for the exercise of the constitutional jurisdiction of board of supervisors.

4. EVIDENCE. *Presumptions. Official duty. Boards of supervisors.*
    In the absence of clear proof to the contrary the courts will
    assume that boards of supervisors, in working specific roads
    by special contract, acted within its powers.

APPEAL from the circuit court of De Soto county.
HON. N. A. TAYLOR, Judge.

Suit by the board of supervisors of De Soto county
against M. W. Jones and others. From a judgment sustaining a demurrer to the declaration, plaintiff appeals.
The facts are fully stated in the opinion of the court.

*R. L. Dabney,* for appellant. .

Section 170, Constitution of 1890:  . . .  "The board
of supervisors shall have full jurisdiction over roads,
ferries, and bridges, to be exercised in accordance with
such regulations as the legislature may prescribe  . . ."
was surely not intended to work such a change in our law
as to render null and void every act of boards of supervisors which deviated a hair's breadth from statutory
direction. If this was the case, in loaning the sinking
funds for the redemption of county bonds, under the authority of section 331, Code of 1906, if the board placed
a loan of one thousand dollars, secured by a trust deed
on real estate, assessed at five cents less than double
the amount of the loan, the contract would be *ultra vires,*
and if the county attempted to recover its money through
the courts, it would be told that it could not recover on
the contract, but must resort to a legal fiction and sue
for money had and received—forsooth, that the county
had lost the money through a hole in its pocket, and that
the borrower had found it.

I have examined all the available Mississippi cases
bearing on this subject, since the Constitution of 1890,
and I gather that the change in the organic law, effected
by section 170, Constitution 1890, amounts to this, so far
as the case at bar is concerned: That the legislative

will having been declared, as to how the board is to
exercise its jurisdiction over roads, that a substantial
compliance with the legislative direction is necessary.
Whether the jurisdiction conferred on boards of super-
visors by said section 170 is dormant until the legisla-
ture declares how it is to be exercised; or whether, in the
absence of all legislative direction on the subject, the
board could go ahead and have the roads worked in any
manner that seemed to it best, are questions very inter-
esting, but not pertinent to the case at bar, for the rea-
son that the legislature has declared its will, touching
the ways in which roads may be worked. But I respect-
fully submit that the declaration in this case discloses
conditions which amounted to substantial compliance with
the statutory directions on the subject of working roads.

The other vital question in case I am mistaken as to
the appellant having statutory authority for making the
contract sued on in the first count, is, was there a mis-
joinder of causes of action, as to the appellee, M. W.
Jones? And this involves a preliminary inquiry, can a
defendant complain of a misjoinder of defendants? Of
course he can complain of a nonjoinder, but simply be-
cause two defendants are named, instead of one, the one
liable and the other not liable, can the defendant really,
be liable to the plaintiff for the wrong complained of in
the declaration, be heard to say that the declaration is
bad, as to him, because it is so as to his codefendant?
We concede that the demurrer of B. F. Jones and Miss
Mamie Jones, filed to the amended declaration, at the
December term, 1910, was good; to the first count, be-
cause it was shown therein that the principal obligor in
the bond was paid more than eighty-five per cent of the
value of the work done, monthly; and good as to the sec-
ond count, because it was for money had and received,
and they were not alleged to have received any of it.
But the demurrer of appellee, M. W. Jones, was also
sustained, at the December term, 1910, on the ground

of a misjoinder of counts, as to him, and appellant required to strike out one or the other of its counts, to escape judgment against it on demurrer.

After appellant had met the objections of the trial judge, both as to striking out one of the counts of the declaration—the second—and had met the other objection by filing an itemized list of things left undone by the contractor, the case went to the jury, at the December term, 1910, and the jury failing to agree, a mistrial was entered. The appellant was then left in this attitude; it had been advised by the judgment of the court that the board had a right to make the contract sued on. That being the case, it had no particular reason to wish to retain the second count of the declaration. But at the March term, 1911, appellees got leave to refile their demurrers. The case was then continued from the March term to the September term, and from the September term to the December term, without any action taken on the demurrers. And when the refiled demurrers were finally argued, at the December term, 1911, that of the appellees, B. F. Jones and Miss Mamie Jones, was confessed by appellee, and that of the contractor, M. W. Jones, was by the court sustained; and on the ground that the contract sued on was *ultra vires*. Had the judgment of the court, on the demurrer filed to the December term, 1910, sustained demurrer's contention that the contract was *ultra vires,* and that the counts of the declaration showed a misjoinder of causes of action, it may be that the appellant would have elected to stand on the second count. But as it was, appellant had elected to stand on the first count at a time when it was the judgment of the court that the board had a right to make the contract sued on. The great hardship suffered by appellant in this case but emphasizes the wisdom of waiting until the evidence is in, before compelling a plaintiff to elect on which count of a declaration he will stand, in case of there being more than one. In this

case the proof would show that while the last eleven
sections of the chapter on roads, etc., had been adopted
for the whole county, as a matter of fact, at the time the
contract was let to cut down the hills, etc., on this six
miles of road, the contractor for that particular part of
the county had been permitted to give up his contract
and been relieved from his bond. Yet, counsel for the
demurrer laid great stress on what he was pleased to
term the folly of a construction of section 4465 which
would permit the board to let one contract to keep a road
in repair, and at the same time, let another contract to
cut down hills and causeway swamps on the same road.
However, this may be, section 729, Code 1906, which is
a rescript of section 671, Code of 1892, provides that,
"The declaration shall contain a statement of the facts
constituting the cause of action, in ordinary and concise
language, . . . and if it contain sufficient matter of
substance for the court to proceed upon it shall be suffi-
cient; and it shall not be an objection to maintaining any
action that the form thereof should have been different."
While this section has been construed by this court re-
peatedly, I respectfully direct the court's attention to
the short but very lucid opinion of Judge CAMPBELL, in
*Gibson-Moore Mfg. Co.* v. *Meeks*, 71 Miss. 614.

A statute, article 78, p. 491 of the Code of 1857 was
construed in *Lampkin* v. *Nye's Executor*, 43 Miss. 241, as
practically doing away with forms of action, and if such
was the effect of that statute—"The declaration shall
contain a statement of the facts constituting the cause
of action, in ordinary and concise language, . . . and
if it contain sufficient matter of substance for the
court to proceed upon the merits of the case, it shall be
sufficient," surely the closing paragraph of section 729
Code of 1906, "and it shall not be an objection to main-
taining any action that the form thereof should have
been different," sustains appellant's contention that
both counts were good. Now, if "it shall not be an ob-

jection to maintaining any action that the form thereof should have been different," why should appellant in the instant case be compelled to give up one of the counts of its declaration, on pain of having a demurrer against it sustained, if forms of action had been abolished in Mississippi, as is stated by Judge CAMPBELL, in *Mfg. Co.* v. *Meeks, supra*? "We have no forms of action. Every action is on the case, and one need only state a case in concise and intelligible language, containing sufficient matter of substance for the court to see that he has a meritorious cause, and his declaration will be sufficient." If the court below had not compelled appellant to strike out the second count of its declaration, it would not have made much difference whether the contract sued on was held to be *ultra vires,* or not; for if it could have recovered for the breach of the contract, it could have recovered what the contractor had been paid, over and above what he was entitled to under the *quantum meruit.* So, even if we are mistaken, both as to the contract sued on in the first count being legal, and as to our right to sue the appellee, M. W. Jones, both on the contract, in the first count, and for money had and received, as in the second, in one and the same declaration, still, when the court below had held the first count good, on demurrer, and at the same time required us to elect on which count we would stand, when the court's mind changed, a year after, and it held the first count (the only one left at that time) bad, on demurrer, it looks to us as a matter of simple justice that the order dismissing the second count should have been rescinded; thus, placing both parties *in statu quo.*

*Farley & Lauderdale* and *Julian C. Wilson,* for appellee.

Error is assigned because the court required the plaintiff to elect whether it would proceed upon the first or

second count of the declaration, as amended. It must be
remembered that the case then stood on the first count as
a suit against Jones and his sureties for breach of con-
dition of the bond, and in the second count against Jones
for money had and received in the nature of a voluntary
overpayment by the board. Of course the sureties could
not be held for money voluntarily overpaid Jones, and
it was impossible to plead and try anything like a single
issue with the case in this situation. The issues in the
case were sufficiently complicated without this addi-
tional complication.

The plea to the first count was, of course, a denial of
the breaches of the bond. The plea to the second count
was *nil debit,* or, at any rate, *non assumpsit.* The
judgments to have been rendered were entirely different.
Under the first count it would have been a judgment
against Jones and his sureties. Under the second count
it would have been a judgment against Jones alone. The
proof would have been entirely different and the defen-
ses entirely different. The defense to the first count was
that Jones complied with his contract and that it was
breached by the board. The defense to the second count
was that the board had paid Jones no money, which it
did not owe him. It was not a technical proposition but
it was a practical one. The defendants were embar-
rassed in defending the two counts together, and even
under our liberal system of pleading this was improper.

The common law system of pleading is still in force in
Mississippi, and while there are no forms of action, still,
as a matter of substance, different causes of action can-
not be improperly joined. The common law rule was,
for one thing, that separate causes of action might not
be joined, which require different pleas or a different
judgment.

It will be observed that entirely different pleas and a
different judgment would have been necessary under the
separate counts in this declaration. But the greatest

objection to the joinder of these two counts was that the two counts did not each affect all the defendants. In 23 Cyc. 401 it is stated:

"In order that causes of action against several defendants be joined, they must each affect all defendants; so distinct causes of action against different defendants may be joined, although in favor of the same plaintiff." See *Simmons* v. *Spencer,* 9 Fed. 581; *Sleeper* v. *World's Fair Banguet Hall Co.,* 166 Ill. 57; *McKee* v. *Kent,* 24 Miss. (2 Cush.) 131.

The case of *McKee* v. *Kent,* it seems to us, settles this matter. It was an action of *assumpsit* brought against John McKee and wife in one count, on a promissory note made by the wife. The second count was for goods sold both the defendants. The court said:

"The first count in the declaration shows no liability whatever against John McKee. The averment is that Martha McKee made her promissory note, etc., and it is not shown that she was at the time the wife of John McKee, and made the note as his agent, or that John McKee was in any manner liable on the note. The wife may, as the agent of the husband, make a contract to bind him; but in such case it must be declared on as his and not her contract. The second count sets forth a joint cause of action against the defendants. When two are sued in the same action, all the counts in the declaration must show a cause of action against both, otherwise it will be defective.

The only difference between that case and this is that in the 24th Mississippi case, the second count showed the cause of action against both defendants and the first count against only one defendant, while in this case the first count showed the cause of action against both defendants and the second count against only one defendant.

We, therefore, insist that the court properly required the plaintiff to elect on which count of the declaration it would proceed.

It then only remains to see whether or not the contract made with Gartrel and assumed by Jones was contrary to the law, or whether it was legal and authorized.

Our contention is that the board of supervisors had no right to make such a contract, or to improve the public roads in this way. In the statement of facts given, we have already endeavored to show that this was an attempt by the board of supervisors not to do any specific piece of work, but to improve, by doing work upon them, six different, fixed miles of roads, which were made favorites because they were much traveled. It is admitted that under the Constitution of the state of Mississippi the boards of supervisors are given full jurisdiction over roads, but this jurisdiction must be exercised in accordance with the regulations provided by the legislature. Both sides agree that the legislature has made such provision, and the question that remains is whether the method preferred in this case was authorized by the legislature. It is respectfully submitted that the general roads of the county may only be worked or improved under the law in two ways: One is by the county doing the work with its own citizens, aided by convicts, under the direction of an overseer. The other is by letting the work by the year, to be done regularly by a contractor who receives certain pay therefor, and this method requires that the contractor shall work the roads at least two years.

We are not referring now to special road districts, which may be created upon the petition of the citizens, to be paid for by special assessment, under sections 365 to 368 of the Code. No attempt was made in this case to comply with this section, nor is such authority claimed. Nor was chapter 149 of the Acts of 1910, page 140 in force in 1908 when this contract, now in suit, was under consideration. We shall not, therefore, discuss them.

The boards of supervisors were authorized to work on and improve the public roads of the county, speaking

generally in the ways mentioned. The plan under the supervision of overseers is provided for by section 4416 to 4441 of the Code of 1906. This is a plan that has been in existence for many years, and with which we are familiar. The other plan was by letting the work to a contractor, and this seems to have been in two ways,—one provided for by sections 4441-4443 of the Code and the other provided for by sections 4465 to 4475 of the Code. These two methods, however, are both plans for working the road by contract, and so far as this case is concerned, any difference between them is immaterial, and will not be discussed.

The plaintiff based its authority to let this contract on section 4441 of the Code as shown in the amended declaration, and also claims authority under section 4465 of the Code. We are not concerned with any differences between the sections, because, so far as this case is concerned, they are the same. They both authorize the boards of supervisors to work the public roads, or some part thereof, by contract. They both provide that the contracts shall not expire in less than two years, and both sections contain this identical language:

"But the board may make a contract for doing specific work, such as cutting down a hill, causewaying a marsh or swamp, and the like, without requiring the contractor to keep it in repair."

No other authority is given the board to make a contract for doing any work on the roads except by a contract to have the work done by the year. The reason for this is perfectly apparent. Where the county is paying a contractor to keep the roads in good condition, it may provide what character of work he shall do. Any work, however, which the board does and pays for, is the people paying for that much work which the contractor should do. In other words, if the board puts the road in good condition, it should not pay the contractor for doing the same work, or any part of it, and therefore, to

prevent the people from paying twice for the same work, or any part of it, the board has no power to do work which the contractor should do.

On the other hand, there may be certain bad places in the road which require construction. For instance, a marsh or swamp may be impassable, and no regular work on it would make it passable, and therefore some construction work would be necessary. At certain places, this is permissible, but of course that does not mean that the board of supervisors could, under the contract system, use this as a cover for improving a number of miles of given road, as was attempted in this case. We do not contend that the permission given the board for doing specific work applies only to the cases named, to wit, cutting down a hill, or causewaying a marsh or swamp, but we do contend that it applies to cases of similar character, viz., individual and specific cases, and that the legislature was careful to define what it meant by specific work, so as to show that macadamizing a whole road was not special work, but that it only applied to an individual place in the road. The difference is right clearly marked by a comparison with section 4414 of the Code. That section is as follows:

"Boards of supervisors in counties not working under the contract system, are hereby authorized and empowered to contract for the working, grading and filling in or macadamizing or graveling specific bad places in the public roads of the county, and to pay for the same out of the county funds, in their discretion."

It is worthy of note that the legislature used apt language to provide that counties not under the contract system could work, grade, fill, macadamize or gravel special bad places on the public roads, by contract, when it was working under the overseer system, and when working under the contract system it could only do specific work, such as cutting down a hill, causewaying a marsh or swamp, and the like. Even if this county were

not under the contract system, and did not claim its authority from sections 4411-4465 of the Code and not under the overseer system, but claimed its authority under section 4414 of the Code, the work herein was not authorized, because it was only authorized to grade and fill and gravel (which was the exact part contracted for in this case) especially bad places of the road, and not entire roads.

Our contention, then, is that by the plain comparison of the three sections, 4414, 4441 and 4465, the last two being the same, it is perfectly apparent that counties under the contract system are only authorized to make special contracts not by the year, to do one certain piece of work on the road, and that counties under the overseer system are authorized to improve general, especially bad places on any one road, but that under neither of these sections are they authorized to improve certain miles of a road by building them up.

Cook, J., delivered the opinion of the court.

The board of supervisors of DeSoto county had adopted the contract system for the working and repair of the public roads of the county. In addition to the regular contracts, the board entered into a contract with appellee Jones' assignor to grade, construct, and gravel three specific pieces of road, aggregating about six miles.

The contractor, it is charged, abandoned his contract after having been paid something like eighty-five per cent of the contract price, and the board was compelled to complete the contract, and now sues the contractor for breach of contract.

There was much pleading and repleading, but, as the essential point in the case may be decided without reference to the pleading precedent to the final judgment of the court sustaining the demurrer to the count declaring upon the breach of contract, we think it necessary to say

only this: The lower court was correct in holding that appellant should elect upon which count it would proceed.

A count against one of the parties to a lawsuit cannot be joined with a count against this party and other parties not liable under the first count. The contention of appellee is clean cut, and, when decided, disposes of the case before us. The demurrer puts in issue the validity of the contract made by the board of supervisors, and claims that, the contract being *ultra vires*, no right of action exists for its breach. In the solution of this question are involved sections 4414, 4441, and 4465 of the Code of 1906, as well as the plenary jurisdiction of boards of supervisors over roads, ferries, and bridges. Section 4414 gives to boards of supervisors in counties not working the roads under the contract system the power to do certain kinds of work by contract upon "especially bad places on the public roads." Sections 4441 and 4465 are substantially the same (so far as the point here involved may be affected), and, after providing for contracts for working the separate roads, the duration of the contracts, and the execution of bonds by contractors, there is added to both sections this clause: "But the board may make a contract for doing specific work, such as cutting down a hill, making a causeway over a marsh, or swamp, and the like." We have said that section 4414 was involved in the construction of the present contract, because it is said that the language employed may serve as interpretative of the scheme worked out by legislation.

It is the position of appellees, if we correctly understand their briefs, that the powers given by the statute to boards of supervisors must be strictly construed and as limitations upon their powers. It is contended that the last clause of sections 4441 and 4465 was intended to restrict the power of the board to make special contracts for specific work within exceedingly narrow limits, and that, if the board oversteps the bounds, its contracts are null and void and cannot be enforced.

It is, of course, well settled that the legislature may prescribe the methods for the exercise of the constitutional jurisdiction of boards of supervisors, and it may be that the legislative department of the government at times seems to doubt the ability of boards of supervisors to do anything at all in the absence of elaborately worked out rules and regulations. However, this may be, we do not deem it our duty to hedge the board about, impugn its intelligence, and destroy its efficiency by limiting its power to provide for specific conditions, unless it appears that they have manifestly ignored and overridden the statute. Something must be left to the discretion of the board, and when they have decided, as in this case, that there are certain roads or stretches of roads which with due regard for economy and to the public service cannot be worked under the general contract system, we must assume that there is a real public necessity for their action. It is easily conceivable that it may be important and necessary to do certain work of a specific nature over many miles of roads which could not be done by contractors usually performing work under the general contract and repair system, confined within narrow limits, which system we feel justified in saying is a makeshift at best.

On the face of the present contract, we cannot assume that the board exceeded its authority; on the contrary, we assume that it was within its powers, in the absence of clear proof to the contrary. The willingness of property owners to be served by the roads contracted for to suffer a special assessment in aid of the enterprise seems to justify the inference that here was an exception to the general rule requiring a different sort of treatment under a special contract which was sensed by the legislature, or, at any rate, should have been foreseen, and there is nothing in the law prohibiting this kind of a contract, but there is enough to warrant us in holding that the contract was authorized, and therefore enforceable.

*Reversed and remanded.*